IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CALVIN PERRY,                           )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )          Case No. 7:16-cv-00362
                                        )
JPAY, INC., *et al.*,                   )          By:  Elizabeth K. Dillon
                                        )               United States District Judge
          Defendants.                   )

## MEMORANDUM OPINION

Calvin Perry, a Virginia inmate proceeding *pro se*,[1] filed this action pursuant to 42 U.S.C.

§ 1983 alleging claims against defendants JPAY, Inc. (JPAY), and various prison officials at

Green Rock Correctional Center (Green Rock) for violation of his rights under the First, Eighth,

and Fourteenth Amendments[2] while Perry was incarcerated there.  (Dkt. No. 1.)  Defendants

filed a motion to dismiss for failure to state a claim, to which Perry responded, and this matter is

ripe for disposition.  (Dkt. Nos. 29, 32.)  Upon review of the record, the court concludes that

defendants' motion to dismiss will be granted in part and denied in part.

## I.   BACKGROUND

Perry asserts a multitude of claims, most of which arise from separate sets of facts.  First,

Perry alleges in his verified complaint that he was subjected to ongoing and daily "imminent

danger of irrevocable harm" because he is assigned to a top bunk bed.  Specifically, he fears

---

[1]  Perry did not proceed with this action *in forma pauperis*; therefore, the court denied Perry's motion asking the court to direct the United States Marshal's Office to serve his summons and complaint on the defendants.  (Dkt. No. 25.)  Perry received an extension of time to serve the summons and complaint upon the defendants himself, pursuant to Rule 4 of the Federal Rules of Civil Procedure.

[2]  Defendants raise argument as to a Fifth Amendment claim.  Perry, however, raises the Fifth Amendment claim in relation to his claims against JPAY, Inc., *see* Compl. ¶ 59, a private entity who the court determines to be an improper defendant for this § 1983 action.  *Supra* Sec. II, B, 2.  Thus, the court need not address the Fifth Amendment claim at this time.

"death or paralyzation" because he is "58 years old and on chronic medications that make [him] dizz[y]," and the bunk bed has no safety rail to prevent him from rolling or falling off while sleeping. Although Perry does not state he has been injured, he fears future injury and asserts "several inmates" have fallen off the top bunk at Green Rock during their sleep. Perry submitted a grievance and an informal complaint on February 29, 2016, requesting that the prison install safety rails; however, Grievance Coordinator Massenburg rejected the grievance at intake because it was a "request for services." Unit Manager Lovern responded to the informal complaint, explaining that Perry needed to submit a request form to the prison doctor to receive a bottom bunk pass and that, in the meantime, prison staff would try to accommodate him with a bottom bunk if one became available in the "A" building. Perry, nonetheless, does not acknowledge Lovern's response and contends that Massenburg intentionally failed to process the grievance and that Crowder was deliberately indifferent in failing to reverse Massenburg's decision. (Compl. ¶¶ 45-47, Ex. E, Dkt. No. 1.)

Perry next asserts he is subjected to ongoing inadequate lighting in his cell. Unit Managers Booker and Lovern would give prison staff daily instructions to turn off the cell lights immediately after "each count is completed," causing Perry to strain his eyes "trying to see in the dark cell to read or to do [his] homework or to retrieve items from [his] locker." As a result, Perry "developed chronic migraines, [his] eyes are constantly hurting and [he is] fatigue[d] all the time." On April 22, 2016, Perry filed a grievance complaining of the dim cell lighting, but it was denied as "unfounded," and Perry appealed. On May 2nd, Perry went to the prison medical department to seek treatment for his migraines and eye pain, explaining to Nurse Betterton that his symptoms were a result of "straining to see in this 'extremely' dim cell." After treating him, Nurse Betterton told Perry, "[t]here's no treatment I can give to you for those ailments, I'm

sorry." That same day, Perry filed an informal complaint for being denied medical treatment. (Compl. ¶¶ 29- 30, 50, Dkt. No. 1.)

As he was leaving the medical department, Perry encountered Warden Booker and complained to him about the inadequate cell lights. In response, Warden Booker told him that "the inmates here like being in the dark, they took a vote for the bright cell lights to be turn[ed] off, I suggest you buy yourself a lamp from the canteen." On or about May 3rd, Perry asked Unit Manager Lovern why he authorized prison staff to turn off the cell lights after each count is completed, but Lovern did not answer and instructed Perry to return to his assigned area. Perry then received the decision from his grievance appeal on May 16th, which Regional Director Marcus Elam denied, affirming that it was "unfounded." Perry contends that Elam "was deliberate[ly] indifferen[t] to [his] basic human needs by failing to correct" the cell lighting issue "when it was in [Elam's] authority to do so." (Compl. ¶¶ 30-34, Dkt. No. 1.)

On May 16th, Perry filed an additional grievance repeating his claim that he was denied medical treatment at his May 2nd visit with Nurse Betterton. (Compl. Ex. B, Dkt. No. 1-2.) In response to the grievance, Nurse Cobbs reported that the treatment Nurse Betterton offered on May 2nd was to refer Perry to an eye doctor and to direct him to resubmit a sick call request for any ongoing medical problems. In his complaint, however, Perry asserts that he is "not in need of visual service from an eye doctor, there is nothing wrong with my vision." Rather, Perry insists that he sought medical treatment "because the cell lights are intentionally turn [ed] off for over 23 hours every day" and that Nurse Betterton "plainly denied" him medical treatment for it. (Compl. ¶¶ 52-54, Ex. G, Dkt. No. 1.)

Perry next asserts that he was subjected to ongoing exposure to dog feces in the exercise yard because the prison houses six dogs who use the yard to relieve themselves daily. As a

result, the exercise yard is "pungent with fees and urine," and, even though the feces are sometimes removed, Perry asserts he is still "subjected to the pungent odor and parvovirus." On May 19th, after Perry filed a grievance and an informal complaint on the matter, Unit Manager Collins and Lieutenant Ridge summoned Perry to their office "in regards to the [ ] complaint." Collins stated to Perry that he did not detect any odors from the exercise yard; however, Perry contends that Collins denies the odor because the prison "receiv[es] a large grant for warehousing these [ ] dogs on the prison compound." During the meeting, Collins told Perry, "Since you're complaining about the dogs, I'm going to get Lt. Ridge to move you across the yard to another [building]." Afterwards, Perry filed an additional grievance on May 26th, complaining of Unit Manager Collins and Lt. Ridge's response and claiming their conversation with him was an "act of reprisal." (Compl. ¶¶ 39-41, Exs. D-1, D-2, Dkt. No. 1.)

On June 23, Lt. Ridge went to Perry's cell in the "A" building and stated, "Mr. Perry, since you like writing complaints on the dogs, pack your stuff up. I am moving you across the yard to "C" [building] cell #220 bottom bunk." Perry responded, "I have not requested to be moved and I do not want to be moved to "C" nor "D" [building]. I'm okay right here on "A" side." Lt. Ridge responded back, "You are being moved to "C" [building] this morning and if you refuse to move, I will place you in jail," referring to the segregation unit. (Compl. ¶ 42, Dkt. No. 1.) Regarding these incidents, Perry alleges that Grievance Coordinator Massenburg "intentionally failed to process" his May 19th and May 26th grievances and "prevented him from exhausting his complaint" on the matter. As noted by the intake forms, the first grievance was not logged because it was a "request for services" and the second grievance was not logged because it "[did] not affect [Perry] personally." Perry argues that Regional Ombudsman Crowder was deliberately indifferent to his rights by failing to reverse Massenburg's decision to

not process the grievances when it was in Crowder's authority to do so. (Compl. ¶¶ 43-44, Dkt. No. 1.)

Perry next asserts that he is exposed to the ongoing practice of haircuts being given "approximately eight feet from the microwave oven where food is prepared and approximately three feet from where [Perry] sit[s] and eat[s] [his] food." Perry states that the non-licensed inmate barber "shakes the barber's cape" after each haircut, causing hair particles to shake all over the area and "subjecting [Perry] to the spread of communicable diseases and hair particles in [his] food." On July 1, 2016, Lt. Childress told Perry that these "barbershops were using proper cleaning and sanitizing chemicals and that she [saw] no need to change anything[.]" Perry contends that none of the buildings in Green Rock have actual "barbershops" and that he filed a grievance on the prison's haircutting practices on July 1st. The grievance was rejected at intake citing that the issue did not affect Perry personally, even though Perry argues that Massenburg intentionally failed to process the grievance. Perry argues that Crowder was deliberately indifferent to his rights by failing to reverse Massenburg's decision to not process the grievance. (Compl. ¶¶ 48-51, Ex. F, Dkt. No. 1.)

Perry next asserts he was denied ongoing access to toilet facilities during his exercise time. There are no urinals in the exercise yard, and Perry is "forced to hold his body waste for an hour or more before a bathroom break is provided." As a result, there have been "several" times where Perry was "forced to urinate on [himself], spoiling [his] clothes." On June 23rd, Perry filed an informal complaint complaining of the lack of toilet facilities, which Warden Booker denied and responded to Perry, "you are correct in your assessment." Perry then filed a grievance on July 1st, which Massenburg denied as untimely. Perry contends that Massenburg

intentionally failed to process the grievance and that Crowder was deliberately indifferent in failing to reverse Massenburg's decision on appeal. (Compl. ¶¶ 55-57, Ex. H, Dkt. No. 1.)

Finally, Perry names as a defendant JPAY, Inc., a private music vendor who sells music devices and music to prisoners. Perry asserts that in November of 2014, he purchased a JP4 music device from JPAY for $49.95 that would malfunction. After Perry made numerous complaints, JPAY replaced Perry's JP4 music device with another one, which Perry attempted to connect to JPAY's music kiosk to download all the songs he had previously purchased from JPAY. Perry alleges that, contrary to JPAY's contract and policy, Perry was unable to access his purchased songs "off the Best of Keith Sweat album" as they were lost during the replacement process. Perry asserts that JPAY was "intentional[ly] negligent in losing and permanently taking away [his] pre-paid property without authorization," and he had to seek mental health treatment for emotional distress "as a result of JPAY[ ] negligently depriving [him] of [his] property and taking advantage of [him.]" (Compl. ¶¶ 35-38, Dkt. No. 1.)

Presently before the court is defendants' motion to dismiss Perry's claims. Perry moved for a preliminary injunction against the defendants and for default judgment against JPAY. The court will address each in turn. Although JPAY is a named defendant, JPAY has not filed a motion to dismiss or otherwise appeared in this case. As an initial matter, the court will address Perry's motion for default judgment against defendant JPAY, Inc. and the applicability of Section 1983 as to this defendant.

## II. DISCUSSION

### A. Motion for Default Judgment against JPAY

Perry moves for entry of default judgment against JPAY, arguing that JPAY failed to respond to Perry's complaint. (Mot. for Default J., Dkt. No. 34.)

1.    **Improper service**

As noted at the outset of this decision, defendant JPAY is the only defendant who has not filed a motion to dismiss or had an attorney appear on its behalf in this case. In his complaint, Perry indicates that JPAY is a Florida corporation, and he later provides "proof of service" by means of a certified mail receipt addressed to: "J-Pay Incorp., 12864 Biscayne Blvd, St. 243, Miami, FL 33181." (Dkt. No. 27.) Contrary to Perry's assertion, however, it appears that JPAY's failure to participate in this case is attributable to their lack of knowledge of the lawsuit. A review of the record shows that Perry did not effectuate proper service on JPAY pursuant to Rule 4 of the Federal Rules of Civil Procedure.

"Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell*, 152 F.3d 304, 306-07 (1998) (noting that "any judgment entered against a defendant over whom the court does not have personal jurisdiction is void"). A plaintiff may either request a waiver of service from defendant or effect proper service. *See* Fed. R. Civ. P. 4(m). Perry chose not to seek a waiver, and, therefore, needs to have properly served pursuant to Rule 4.

Under Rule 4(h), proper service upon a corporate defendant may be effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Alternatively, a plaintiff may serve process in a manner approved by state law for an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. *See* Fed. R. Civ. P. 4(h)(1); Rule 4(e). Perry can satisfy the requirements of Rule 4 in this case by following the rules for service of process in Virginia (the state where the district court is located) or Florida (where Perry attempted to effectuate service). In Virginia, a

corporation may be served by "personal service on any officer, director, or registered agent" or, if the registered agent cannot be found with reasonable diligence at the registered office, then by serving the clerk of the State Corporation Commission.  Va. Code Ann. §§ 8.01-299, 13.1-637. Alternatively, Florida law provides that process against any private corporations may be served:

(a) On the president or vice president, or other head of the corporation;

(b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;

(c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or

(d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph c), on any officer or business agent residing in the state.

Fla. Stat. § 48.081(1).  Section 48.081(3)(a) further provides that:

[a]s an alternative to all of the foregoing, process may be served on the agent designated by the corporation under § 48.091. However, if service cannot be made on a registered agent because of failure to comply with §48.091, service of process shall be permitted on any employee at the corporation's principal place of business or any employee of the registered agent. A person attempting to serve process pursuant to this paragraph may serve the process on any employee of the registered agent during the first attempt at service even if the registered agent is temporarily absent from his or her office.

Here, Perry fails to use a mailing address that effectuates service in adherence with Rule 4(h) or with either Virginia or Florida state law.[3]  In fact, Perry fails to address service to any particular individual at JPAY at all, addressing his mailed service to: "J-Pay Incorp., 12864

---

[3]  Moreover, Perry does not effectuate process of service by way of Florida's substitute service statutes, which provide an exception to the general rule that a defendant must be personally served.  Under Section 48.181 of the Florida statutes, a plaintiff may serve Florida's Secretary of State on behalf of the defendant if the complaint alleges the jurisdictional basis for invoking the statute. *See Mecca Multimedia, Inc. v. Kurzbard*, 954 So. 2d 1179, 1182 (Fla. 3rd DCA 2007).  The jurisdictional requirements of § 48.181 are that the defendant conducts business in Florida and is either: (1) a nonresident; (2) a resident of Florida who subsequently became a nonresident, or (3) a resident of Florida concealing her whereabouts. *See* § 48.181.  Again, these jurisdictional allegations are required in the complaint as a prerequisite to seeking the benefit of substitute service, which Perry has not done. *See Mecca Multimedia, Inc.*, 954 So. 2d at 1182 (finding substitute service was not appropriate where complaint failed to allege facts showing defendant was concealing its whereabouts).

Biscayne Blvd, St. 243, Miami, FL 33181."[4]  Accordingly, Perry has failed to effectuate proper

service on JPAY within the meaning of Rule 4, and the court is without jurisdiction to enter

default judgment as to this defendant.  Thus, Perry's motion for default judgment is denied.

### 2.      JPAY is an improper defendant under Section 1983

In order to state a cause of action under § 1983, a plaintiff must allege facts indicating

that he has been deprived of rights guaranteed by the Constitution or laws of the United States

and this deprivation resulted from conduct committed by a person acting under color of state law.

*West v. Atkins*, 487 U.S. 42 (1988).  Although private conduct is generally beyond the reach of §

1983, "the deed of an ostensibly private organization" may at times be treated "as if a State has

caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288,

295 (2001).  Specifically, acts of a private entity may be found to constitute state action if "there

is such a 'close nexus between the State and the challenged action' that seemingly private

behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison

Co.*, 419 U.S. 345, 351 (1974)); *accord Mentavlos v. Anderson*, 249 F.3d 301, 314 (4th Cir.

2001).

There is no single inquiry to identify state action, however, the Fourth Circuit has

identified circumstances where a private entity's actions are fairly attributable to a State: (1) the

government "did more than adopt a passive position toward the underlying private conduct;" (2)

the state delegates its obligations to the private actor and the acts conducted were in pursuit of

those delegated obligations; (3) "the government's conferral upon that party of what is, at core,

sovereign power" and "the function performed is traditionally the exclusive prerogative of the

---

[4] The court notes that the website for the Florida Department of State provides an accessible online search engine to discover the names and addresses of JPAY's corporate officers, directors, and registered agent.

State;" or (4) there was "private use of…challenged state procedures with the help of state officials." *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 342 (4th Cir. 2000).

Even taking all of Perry's allegations as true, Perry fails to allege facts that would convert JPAY's failure to distribute purchased music into state action. The prison's conduct here was clearly passive, as all Perry did was buy music directly from JPAY. Likewise, Perry fails to allege that the prison delegated any obligations to JPAY to provide such music, and it is traditionally not the prison or state government's obligation to sell music to inmates. Nor did the state confer any type of sovereign power upon JPAY. Finally, Perry fails to allege that JPAY made use of any sort of challenged government procedures with the assistance of state or prison officials. Not only do JPAY's actions not fall under any of the four categories of private conduct recognized in *Goldstein*, but there appears to be no "close nexus" between the Commonwealth of Virginia and JPAY's failure to provide Perry his purchased music. *Brentwood*, 531 U.S. at 295. As such, Perry cannot show JPAY acted in anything other than a private capacity, and JPAY's conduct cannot be converted to state action for purposes of §1983.

Although JPAY never filed a motion to dismiss, the court concludes that JPAY is not an appropriate defendant amenable to suit under § 1983. The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1). The court has inherent power to *sua sponte* dismiss any claims arising under § 1983 against a defendant for whom Perry cannot state a cognizable claim for relief. *See Eriline Co. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006) ("Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it."). Accordingly, the court *sua sponte* dismisses all claims against JPAY pursuant to § 1915A(b)(1).

**B. Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive the defendants' motion to dismiss for failure to state a claim, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Although a complaint need not plead facts with heightened specificity, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Consequently, "a plaintiff must 'nudge[ ] [its] claims across the line from conceivable to plausible' to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible if the complaint contains factual content to allow the court to reasonably infer that there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In particular, to state a §1983 claim, Perry must allege sufficient facts to establish "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In considering the legal sufficiency of the complaint, the court accepts all well-pled factual allegations in the complaint as true and all reasonable inferences "in the light most favorable to the plaintiff." *Wag More Dogs*, 680 F.3d at 365. The court, however, need not accept as true "legal conclusions couched as facts or unwarranted inferences, unreasonable

conclusions, or arguments." *Id*. (internal quotation marks and citations omitted). In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (quoting *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not [ ] without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (quoting *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996)).

### 1.    Official capacity damages

To the extent Perry brings this action against the prison staff defendants in their official capacities for monetary damages, his claim is not cognizable under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Because the prison official defendants in their official capacities are not "persons" who can be sued under § 1983, the court must dismiss Perry's attempted claims against them under § 1915A(b)(1) as legally frivolous. Accordingly, the court grants defendants' motion to dismiss as to those claims against all defendants in their official capacities.

### 2.    Eighth Amendment

Perry alleges that he suffered violations to his Eighth Amendment rights to be free from cruel and unusual punishment when: (1) Lovern, Booker, and Betterton subjected Perry to

continuous dim cell lighting; (2) Collins subjected Perry to dogs defecating in his exercise yard, exposing Perry to the pungent odor and parvovirus; (3) Childress subjected Perry to unsanitary living conditions because barbers cut hair near food; (4) Booker, Massenberg, and Crowder deprived Perry of access to toilet facilities; (5) Lovern assigned Perry to a top bunk assignment and was deliberately indifferent to Perry's safety; and (6) Betterton, Cobbs, Lovern, and Booker denied Perry medical treatment for his eye pain.[5]  The court addresses each claim sequentially.

        *a.*      *Living conditions*

In order to establish cruel and unusual living conditions, a prisoner must prove that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (emphasis in original) (internal quotation marks omitted).  Only extreme deprivations are sufficient to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See Hudson v. McMilian*, 503 U.S. 1, 8-9 (1992).  To demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions. *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Strickler*, 989 F.2d at 1381.  The subjective component of a challenge to conditions of confinement is satisfied by a showing of deliberate indifference by

---

[5] Perry further alleges that the conduct that gave rise to the foregoing claims against Massenburg and Crowder also violated Perry's rights under the Fourteenth Amendment.  Specifically, Perry argues that defendants violated his rights under the Due Process Clause by acting with deliberate indifference to his serious medical needs and to his prison grievances. However, Perry does not allege sufficient facts to state a separate claim under the Due Process Clause.  Nor does he state a claim under the Equal Protection Clause so as to invoke analysis under the Fourteenth Amendment.   Stating that his Fourteenth Amendment rights were violated, without more, is insufficient to state a plausible claim with a right to relief above the speculative level. *Twombly*, 550 U.S. at 555-56, 570.  As such, the court construes any references to the Fourteenth Amendment to stand for the proposition that the Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

prison officials. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. Instead, deliberate indifference requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *See id.* at 837; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

i.     Cell lighting

Regardless of whether Perry was, in fact, "daily subjected to inadequate light" in his cell, he fails to show that Nurse Betterton acted with deliberate indifference as nothing in the record suggests that she was personally involved with denying Perry cell lighting. With respect to Unit Managers Lovern and Booker, however, Perry alleges in his denial of medical care claim that the cell lights are intentionally turned off for "23 hours" of the day. Inconsistent with this allegation, the record also reflects that the inmates previously took a vote for the bright cell lights to be turned off after each count is completed, and this prison policy was merely implemented by the prison officials. (Compl. ¶ 29; *see* Intra-Agency Mem., Dkt. No. 36-3.) While it is of the court's opinion that, based on the latter set of facts, Perry fails to state a claim that his cell lighting was constitutionally deficient, Perry's assertion that the cell lights are intentionally turned off for "23 hours" of the day, construed liberally and in the light most favorable to Perry, is sufficient to state a plausible claim at this stage. However, the court cautions that barring some sort of evidence substantiating that the cell lights are turned off for "23 hours" of the day, it is unlikely that this claim will be able to survive after the motion to dismiss stage. Accordingly, Perry's cell lighting claim survives with respect to Unit Managers Lovern and Booker, and is dismissed with respect to Nurse Betterton.

ii.     Environmental conditions

Perry claims that Collins subjected him to unsanitary living conditions because there are six dogs living at B building and using the exercise yard to relieve themselves daily, exposing Perry to dog feces. Perry claims that Collins knew that this environmental health hazard subjected Perry to a "pungent odor and parvovirus" because Perry had made complaints. Yet, despite having such knowledge, Collins did not acknowledge the dog feces because he was receiving monetary compensation for housing the dogs. Regardless of whether Perry can state a claim as to Collins' deliberate indifference, Perry fails to demonstrate actionable injury above the speculative level. "An inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, 'to the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Albritton v. Edwards*, No. Civ. 7:05-cv-00384, 2005 WL 2777284, at *3 (W.D. Va. Oct. 25, 2005), *aff'd*. 183 F. App'x (4th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Here, the harms arising from the odor and the risk of contracting parvovirus, a disease that cannot be transmitted from animals to humans, are too speculative to allege significant injury.

Likewise, Perry fails to state a claim against Childress for his allegation that the inmate barber who cuts hair and shakes hair particles where food is prepared causes Perry substantial harm. Specifically, "subjecting [Perry] to the spread of communicable diseases and hair particles in [his] food" is too speculative and merely alleges the risk of future harm. As such, Perry fails to state a claim upon which relief can be granted in regard to both the dog feces and the hair cut practices. Therefore, these claims against Collins and Childress, respectively, are dismissed.

iii.     Lack of toilet access during exercise

In regard to Perry's lack of access to a toilet while on the exercise yard, he alleges several occasions where he was forced to urinate on himself and spoil his clothes despite Booker, Massenburg, and Crowder acknowledging his informal complaints and grievance on the matter. Contrary to Perry's assertions, "the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets." *Abdur-Reheem-X v. McGinnis*, 1999 WL 1045069, at *2 (6th Cir. 1999). "Temporary restrictions on bathroom use, even ones lasting hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety." *Watson v. Graves*, No. 1:15cv1214, 2017 WL 4533103, at *5 (E.D. Va. Oct. 6, 2017) (citation omitted). To be sure, "while waiting to go to the bathroom for several hours [while confined in the recreation yard] is certainly uncomfortable, it does not constitute a 'deprivation[] denying the minimal civilized measure of life's necessities.'" *Trevino v. Jones*, 2007 WL 710213 (N.D. Okla. Mar. 6, 2007) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Watson*, 2017 WL 4533103, at *6 (prisoners have "no constitutional right to unfettered access to a toilet" and waiting for two hours to access a toilet in the recreation yard does not constitute a denial of a minimal measure of life's necessities). Here, Perry asserts that his exercise time is approximately one hour. Such a limited period of time to be denied access to a toilet is insufficient to show that he has suffered serious or significant injury so as to implicate his Eighth Amendment rights. Accordingly, the court will dismiss this claim.

b.     *Denial of medical treatment*

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A prison official is

"deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard and, thus, mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. *Estelle*, 429 U.S. at 105-06; *see Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

i.    Eye strain

Perry alleges he was denied medical treatment for his chronic eye pain and migraines "due to being forced to strain [his] eyes to see in the dim cells, because the[] cell lights are intentionally turn[ed] off for over 23 hours every day." Specifically, Perry claims that Unit Managers Lovern and Booker deliberately gave prison staff daily instructions to turn the bright cell lights off after each count is completed, and that when Perry sought medical treatment, Nurse Betterton told him, "There's no treatment I can give to you for those ailments, I'm sorry." Perry concludes a correlation between the dim cell lights and his eye strain, fatigue, and headaches based on his own diagnosis, not one of a medical professional, which is insufficient to state a serious medical need. *See, e.g.*, *Turner v. Watson*, No. 7:08-cv-00524, 2008 WL 5350708, at *2 (W.D. Va. 2008). Moreover, while deliberate indifference may be manifested by prison medical professionals in their response to the prisoner's needs, a lapse in professional judgment does not necessarily amount to deliberate indifference. *Farmer*, 511 U.S. at 844; see also *Estelle*, 429 U.S. at 104-06. Importantly, "mere disagreement with medical personnel with

respect to a course of treatment is insufficient to demonstrate deliberate indifference." *Thornhill v. Aylor*, 2016 WL 8737358, at *11 (W.D. Va. Feb. 19, 2016) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Nurses Betterton and Nurse Cobbs simply diagnosed Perry in a manner with which he disagreed, and were unable to provide him with his desired resolution of ordering the cell lights to be turned on. Thus, Perry fails to show deliberate indifference as to Nurse Betterton and Nurse Cobbs. As it regards Lovern and Booker, Perry likewise fails to state a claim as he has not demonstrated a "serious medical need" to which Lovern and Booker can be deliberately indifferent. Accordingly, defendants' motion to dismiss will be granted as to this claim as it pertains to Betterton, Cobbs, Lovern, and Booker.

ii.     Top bunk assignment

Perry alleges that Unit Manager Lovern was deliberately indifferent to Perry's safety by assigning him a top bunk bed that has "no safety rail to prevent [Perry] from rolling off[ ] while sleeping," especially when Perry is "58 years old and on chronic medications that make [him] dizz[y]." In the present case, Lovern did not "know" of a substantial risk of serious harm; rather, Lovern merely had Perry's representations as to his medical needs. Perry offered nothing to Lovern, other than his own bare assertion, to indicate that he required a bottom bunk assignment. Moreover, without an institution physician's order requiring a bottom bunk, Lovern had no reason to believe that there was an error with Perry's top bunk assignment. *See, e.g.*, *Pennington v. Taylor*, 343 F. Supp. 2d 508, 512-13 (E.D. Va. 2004). Even if, *arguendo*, Perry established that Lovern was deliberately indifferent as to his bunk assignment, Perry's age, dizziness, and fear of falling off the top bunk are insufficient to constitute a "serious medical need." *Iko*, 535 F.3d at 241. Accordingly, Perry cannot state a plausible claim upon which relief can be granted as it regards his top bunk assignment, and this claim will be dismissed.

### 3. Retaliation

Perry alleges that Unit Manager Collins and Lt. Ridge moved him to a different cell in another building in retaliation for filing a grievance about the dogs using the exercise yard to relieve themselves. Perry claims that Massenburg intentionally failed to process the grievances, Crowder deliberately failed to reverse Massenburg's decision, and Elam deliberately failed to correct the dim cell lights, all in retaliation for Perry filing the grievance and complaining of the issue in the first place. To state a claim of retaliation under § 1983, a plaintiff "must allege that (1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

First, Perry alleges that he engaged in protected First Amendment activity, which includes the right for an inmate "to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Broadly, "[t]he First Amendment protects the right to petition the Government for a redress of grievances[.]"[6] *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448) (4th Cir. 2004)). Even though "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). As such, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*

---

[6] "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

*v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, by alleging that he filed grievances against prison officials, Perry has sufficiently pleaded he engaged in protected conduct. *Id*.

Second, Perry has adequately pleaded that Collins and Ridge changing his housing and Massenburg, Booker, Crowder, and Elam intentionally failing to process his grievances adversely affected his First Amendment rights. *Constantine*, 411 F.3d at 499. "[F]or purposes of a First Amendment retaliation claim under [Section] 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249 (quoting *Constantine*, 411 F.3d at 500) (internal brackets and quotation marks in original). Perry's assertions satisfy this requirement.

Finally, Perry alleges a causal connection between the First Amendment activity and the alleged retaliatory actions. *Constantine*, 411 F.3d at 501. To demonstrate a causal connection, Perry can use circumstantial evidence to show that defendants were aware of the First Amendment activity and that the retaliation occurred within "some degree of temporal proximity" to that activity. *Constantine*, 411 F.3d at 501. Here, Perry alleges that Collins and Ridge summoned him to their office on May 19th, the same day Perry filed the grievance, where Collins stated, "Since you're complaining about the dogs, I'm going to get Lt. Ridge to move you across the yard to another [building.]" On June 1st, the grievance was received by the prison's ombudsman service unit, and on June 23rd, Ridge approached Perry in his cell in "A" building and stated, "Mr. Perry, since you like writing complaints on the dogs, pack your stuff up. I am moving you across the yard to "C" [building.]" (*See* Compl. Ex. 1-2, at 13, Dkt. No. 1.) The temporal proximity and the content of Collins' and Ridge's statements are sufficient to state a causal connection. *See Martin*, 858 F.3d at 250.

Accordingly, Perry states a claim for retaliation against Collins and Ridge. However, any causal connection between Massenburg, Booker, Crowder, and Elam intentionally failing to process Perry's grievances and the actual filing of the grievances is too tenuous to state a claim, and the court declines to speculate as to whether these defendants retaliated against Perry. Therefore, Perry's retaliation claim is dismissed with respect to Massenburg, Booker, Crowder, and Elam.

### 4.    Qualified Immunity

Having determined that Perry has plausibly stated an Eighth Amendment living conditions claim against Booker and Lovern and a First Amendment retaliation claim against Collins and Ridge, the court turns to defendants' claim that they are entitled to the protection of qualified immunity in their individual capacities. "[Q]ualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). In deciding whether a defendant is entitled to qualified immunity, the court must determine "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* at 881.

A right can be clearly established even if there does "not exist a case on all fours with the facts at hand," as long as established law makes the right apparent. *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015). Where a plaintiff "(1) allege[s] a violation of a right (2) that is clearly established at the time of the violation," a motion to dismiss on qualified immunity grounds must be denied. *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012). The court has already concluded that Perry alleges plausible violations of constitutional rights under

the Eighth and First Amendments, and therefore, turns to defining the rights and determining whether those rights were clearly established at the time of the events alleged in the complaint.

Regarding Perry's cell lighting claim, a prisoner has an Eighth Amendment right to humane conditions of confinement, which guarantees a prisoner's right to receive the "minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298 (1991). A prisoner has a right to avoid deprivations that are not motivated by any legitimate penological justification, such as the need for order and security. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). These rights were clearly established at the time of the cell lighting issues described in Perry's complaint, and the court finds that Booker and Lovern are not entitled to qualified immunity at this early procedural stage.

With respect to Perry's retaliation claim, the specific right at issue is defined as the right for an inmate "to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker*, 855 F.3d at 541. That right, as noted by the Fourth Circuit, was established in a decision in April of 2017. Although Perry filed his complaint in August of 2016, the Supreme Court has recognized for many years that prisoners retain the First Amendment right to "petition the government for the redress of grievances" while incarcerated. *Turner v. Safley*, 482 U.S. 78, 84 (1987); *see Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("The filing of an inmate grievance is protected conduct."); *see also Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). Therefore, Collins and Ridge are not entitled to qualified immunity as to Perry's retaliation claim.

**C.     Motion for Preliminary Injunction**

Perry filed a motion for a preliminary injunction in which he asks the court to order the defendants to cease all conduct that gave rise to the same living conditions claims from his § 1983 complaint: inadequate cell lighting, dog feces in the exercise yard, hair cutting practices in common area, dangerous top bunk bed assignment, and lack of toilet access during exercise time. In support, Perry submitted two sworn witness affidavits by prison inmates corroborating his cell lighting claim that the "cell lights are off for over 23 hours a day."  (Mot. for Prelim. Inj., Dkt. No. 36-1; Barksdale Aff., Dkt. No. 36-3; Tibbs Aff., Dkt. No. 36-3.)

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly.  *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing" that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008).  The party seeking relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd.*, 952 F.2d at 812.  Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief.  *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991).  "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps*, 444 F. Supp. 1167, 1182 (W.D. Va.

1978) (quoting *Va. Petroleum Jobbers Ass'n. v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958)).

Having reviewed Perry's motion, the court concludes that he has not made a "clear showing" that he is likely to suffer "actual and imminent" irreparable harm in the absence of preliminary injunctive relief. First, the court has already concluded that Perry cannot state a plausible claim raising a right to relief above the speculative level as regards his dog feces, hair cut practices, top bunk bed, and lack of toilet access claims at the motion to dismiss stage. Likewise, Perry has not shown that the irreparable harm he faces is "neither remote not speculative" so as to warrant injunctive relief. *Direx Israel, Ltd.*, 952 F.2d at 812. Second, as regards his inadequate cell lighting claim, Perry has failed to demonstrate that any alleged violation of his rights cannot be adequately addressed at a trial on the merits. In fact, the cell lighting claim survives the defendants' motion to dismiss, and the court finds that further analysis on the merits of this claim would be premature at this stage. Accordingly, the court will deny Perry's motion for a preliminary injunction.

### III. CONCLUSION

For the reasons stated herein, defendants' motion to dismiss will be denied in part and granted in part, and Perry's motions for preliminary injunction and default judgment will be denied.

An appropriate order will be entered this day.

Entered: March 13, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge